# KLAFTER|LESSER

TWO INTERNATIONAL DRIVE • SUITE 350 • RYE BROOK, NY 10573
914-934-9200 • www.klafterlesser.com

April 12, 2021

**VIA ECF**

District Judge John P. Cronan
United States District Court
Southern District of New York
500 Pearl St.
New York, NY 10007

**Re:**   ***Jeffreys et al. v. The Estee Lauder Companies, Inc. et al***
   **Civil Action No. 19 Civ. 04996 (JPC)**

Dear Judge Cronan:

We represent Plaintiff Vickey Jeffreys and the seventeen opt-in Plaintiffs who have joined this case (collectively, the "Plaintiffs"). We respectfully submit this letter on behalf of all the Plaintiffs and with the agreement of the Defendants, The Estee Lauder Companies, Inc., Estee Lauder Inc., ELC Beauty LLC, ELC Management LLC, and Jo Malone Inc. ("Defendants"), seeking the Court's approval of the settling of this Fair Labor Standards Act ("FLSA") case and of Plaintiffs' Counsel's application for fees and costs.

We are pleased to have reached this amicable resolution of the litigation, the provisions of which are set out in full in the Settlement Agreement and Release ("Settlement Agreement," "Settlement," or "Agreement"), which is attached as Exhibit A to the Declaration of Seth Lesser, Esq. ("Lesser Dec."), filed concurrently herewith. Each of the Plaintiffs has individually agreed to the terms of the Agreement and by this "*Cheeks*" letter motion, the parties are requesting the Court's approval pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015).

For the reasons set forth below, the parties believe the Settlement is fair and reasonable and respectfully request the Court approves the terms of the Agreement.  The parties have submitted their agreed-upon Stipulation and Order of Final Dismissal With Prejudice which the parties hope the Court will approve and sign, which is attached to as Exhibit A to the Settlement Agreement (Lessser Decl. Ex. 1).

## I.   Procedural History and Plaintiffs' Allegations (*See* Lesser Dec. ¶¶ 3-7)

Plaintiff Vickey Jeffreys filed her complaint on behalf of herself and others similarly situated on May 29, 2019 (the "Complaint") (Dkt. No. 1). The Complaint sought to recover unpaid wages and overtime compensation under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Ms. Jeffreys worked as a freelance employee for Defendants at third-party retail locations that sold Defendants' Jo Malone line of products. Ms. Jeffreys was paid on an hourly basis, but alleged that she was not paid an overtime premium for hours worked beyond 40 in a

NEW YORK • NEW JERSEY • WASHINGTON, DC

District Judge John P. Cronan
Page 2
April 12, 2021

workweek, and that she was actively discouraged by Defendants from reporting more than 40 hours per workweek, regardless of the actual hours she worked.

Defendants answered, denying all of the claims in the Complaint, and following a pre-trial conference with the parties, the Court set a discovery deadline of May 31, 2020 (Dkt. No. 27), which was later extended to August 3, 2020 due to the COVID-19 Public Health Emergency (Dkt. Nos. 35 and 36). The parties exchanged written discovery and produced documents.  Before discovery closed, the parties informed the Court that they had discussed potential ways to resolve the case, and that Defendants, for purposes of facilitating a possible settlement, had stipulated to sending notice to potential members of an agreed-upon putative collective pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b) (Dkt. No. 43). Once the size of the collective was known at the close of the notice period, the parties would have a clearer idea of the size of the case, which would allow them to engage in meaningful settlement discussions. *Id.* In order to focus on potential settlement, the parties also sought an additional extension of the discovery deadline, until 30 days after the close of the notice period, which the Court granted (*Id.*; Dkt. No. 44).

Following the Court's approval of the parties' stipulation and form of notice (Dkt. No. 51), notice was sent to a putative collective of individuals who performed freelance work for Jo Malone in New York, California, New Jersey, Arizona, Virginia and Illinois within the prior three years (six years for New York employees). The parties agreed to send notice to current and former employees in the six aforementioned states because these were the six states in which opt-in plaintiffs who had already filed their consents to sue worked. The notice period closed on January 4, 2021 and a total of seventeen opt-ins joined Ms. Jeffreys in the case – the eighteen total individuals constituting the Plaintiffs whose claims were then mediated.

The parties held a full day mediation with JAMS mediator Marc E. Isserles, Esq. on March 5, 2021. Mr. Isserles is a well-known and respected mediator with experience in labor and wage and hour cases. Prior to the mediation, the parties held a conference with Mr. Isserles to discuss expectations for the mediation, and Defendants supplemented their production of time and payroll records to include the entirety of each Plaintiff's employment with Defendants. The parties also met and conferred to discuss Defendants' production and exchanged initial assessments of each side's analysis of the data. Going into the mediation, both parties had a firm understanding of the claims in the case and the potential extent of Plaintiffs' damages, and both sides were familiar with the other side's positions and arguments.[1]

The March 5, 2021 mediation session was conducted in good faith, at arm's length, and was ultimately successful, and the parties agreed to settle Plaintiffs' claims on the terms memorialized in the Settlement Agreement, as discussed below.

---

[1] After the parties informed the Court of the mediation scheduled for March 5, 2021, the Court adjourned the discovery deadline to April 5, 2021 (Dkt. No. 67).

NEW YORK • NEW JERSEY • WASHINGTON, DC

District Judge John P. Cronan
Page 3
April 12, 2021

## II.    Plaintiffs' Damages (*See* Lesser Dec. ¶¶ 8 -11)

This is a wage and hour off-the-clock case, meaning that the Plaintiffs assert that there were weeks in which they worked over forty hours but were not paid overtime for all the hours over forty per week that they worked.  Defendants deny all such claims. One of the primary issues faced by Plaintiffs, however, is that they were hourly freelance associates, most of whom only occasionally worked for Defendants.  During the pre-mediation discovery, Defendants produced all of the relevant payroll records for each Plaintiff.  The records showed both the intermittency of their work and that they were not all uniformly assigned to work 40 hours a week throughout the year. For most, the exact number of hours they were assigned changed on a weekly basis. Moreover, the work Plaintiffs performed was subject to seasonal fluctuations, and for a great many workweeks within the statutory period, certain Plaintiffs worked fewer than 40 hours. Hence, determining each Plaintiff's potential individual damages required a discrete review of each Plaintiff's time and payroll records, and discussion with each of the Plaintiffs by Plaintiffs' counsel.

The parties agree, based upon each side's review of the payroll records, that Plaintiffs fall into three categories: those who worked for Defendants during the statutory period and who worked at least one week of more than 40 hours (6 members of the collective); those who worked for Defendants during the statutory period but who *never* worked more than 40 hours per week (8 members of the collective); and those who did not work for Defendants during the statutory period at all (4 members).[2]

The six individuals with claims within the statutory period are named plaintiff Vickey Jeffreys, and opt-in plaintiffs Arvin Gharenmani, Michelle Galang, Soheyla Safiran, Vincent Tanico, and Charles Warburton.  In discovery, Ms. Jeffreys produced a series of journals in which she kept personal time records for the entire course of her employment with Defendants (a period of over 6 years). To determine Ms. Jeffrey's damages, the parties reviewed Ms. Jeffrey's journals extensively. Plaintiffs' counsel estimates that Ms. Jeffreys is entitled to between 321.5 to 442 hours of unpaid overtime, which Defendants deny. To determine the damages for the five opt-in plaintiffs with live claims, the parties relied on Defendants' payroll records and Plaintiffs' representations as to their time worked and their pay stubs. The parties agreed to credit each opt-in 4 hours of overtime for *any* week in which the records indicate that the opt-in recorded at least 35 hours.

Based on Ms. Jeffery's journals, and the parties' payroll records, Plaintiffs calculated these maximum possible damages, including liquidation, for the six individuals:

| NAME | Maximum Damages |
|---|---|
| Jeffreys, Vickey | $31,382.00 |
| Gharenmani, Arvin | $21,192.00 |

---

[2] These individuals were sent the notice in the case based upon Defendants' intent to provide Plaintiffs with as broad a list of contact information for individuals who work or worked within the limitations period in each of the six agreed-upon states as possible.

NEW YORK • NEW JERSEY • WASHINGTON, DC

District Judge John P. Cronan
Page 4
April 12, 2021

| | |
|---|---:|
| Galang, Michelle | $5,244.00 |
| Warburton, Charles | $3,312.00 |
| Safiran, Soheyla | $1,728.00 |
| Tanico, Vincent | $1,512.00 |

Counsel for Plaintiffs spoke to the eight members of the collective who Defendants allege never worked more than 40 hours in a week during the statutory period, and also to the four Plaintiffs who Defendants allege did not work within the statutory period at all. None have disputed Defendants' assertions. Based on the time records and the discussions with these individuals, these 12 individuals do not have compensable time in this litigation. Were this case to proceed to trial, it is thus very likely that these 12 individuals would not be entitled to an award of damages. However, despite that, they remain for now members of the collective who received notice and who timely joined the case. The parties agree that it is appropriate for these individuals to be compensated in return for their releases as part of the Settlement.

### III.    Settlement Terms (*See* Lesser Dec. ¶¶ 12-15)

At the March 5, 2021 mediation, under the guidance of Mr. Isserles, an experienced mediator, and with Plaintiffs' agreement in advance, the parties agreed to negotiate Plaintiffs' damages prior to and separate from any negotiation of attorneys' fees. As often happens in a number of FLSA cases, particularly smaller cases, the accumulated attorneys' fees in this case have grown larger than any potential recovery on behalf of Plaintiffs. Using recognized best practices, accordingly, the mediation first addressed the Plaintiffs' damages.  Once settlement agreement was reached as to each of the Plaintiffs – which, as discussed below, provided excellent results for these Plaintiffs – Mr. Isserles helped the Parties mediate Plaintiffs' counsel's costs and fees to the agreed-upon amount of $167,500.  Had a resolution not been reached, Plaintiffs' Counsel would have filed a contested motion for an award of fees and costs, which time and effort for the Parties (and for the Court) has been avoided by the agreed-upon settlement.

The Settlement Agreement provides that the parties agreed to resolve this action for a total settlement amount of $217,500 (the "Settlement Amount"), $50,000 of which is payable directly to Plaintiffs in satisfaction of their liability claims (the "Net Settlement Amount") and $167,500 of which is to be paid to Plaintiffs' Counsel in satisfaction of their claims for attorneys' fees and costs. For the Plaintiffs, this constitutes a very successful outcome, as discussed below.  For Plaintiffs' counsel, this constitutes a significant negative multiplier of the time and expenses put into the case.

The parties have agreed to a wage-and-hour release for each Plaintiff. Additionally, the parties did not include a confidentiality provision and nothing in the Settlement Agreement

NEW YORK • NEW JERSEY • WASHINGTON, DC

District Judge John P. Cronan
Page 5
April 12, 2021

precludes the parties from truthfully communicating their experiences concerning the Action or Settlement. Accordingly, the Parties believe that the terms of the Settlement Agreement are not overbroad and mutually benefit all parties allowing them to avoid any further unreasonable expenses and the aggravation of continued litigation.

## IV.    Plaintiffs' Recovery (*See* Lesser Dec. ¶¶ 16-19)

The $50,000 Net Settlement Amount to Plaintiffs is a successful result for Plaintiffs. For the six Plaintiffs with live claims, their individual settlement amounts represent a *full* recovery of their claimed backpay, and essentially *two-thirds* of their total possible claims – i.e., their claimed backpay plus liquidated damage claims. For the 12 Plaintiffs without compensable time, this settlement provides them $450, each, for release of their claims, whereas at trial or facing a dispositive motion their claims would likely have little to no value.

Considering the risks associated with trying the remaining claims, and establishing damages, this amount – for the Plaintiffs with viable damage claims representing essentially 2/3rds of their total maximum possible recovery – is clearly reasonable. *See Rojas v. Pizza Pete's LLC*, 2019 U.S. Dist. LEXIS 149717, *5 (S.D.N.Y. Sept. 3, 2019) (net settlement of 36% of total alleged damages is "clearly reasonable given the uncertainties inherent in any litigation"); *Chowdhury v. Brioni America, Inc.*, 2017 U.S. Dist. LEXIS 196469, *6 (S.D.N.Y. Nov. 29, 2017) (net settlement of 40% of FLSA plaintiffs' maximum recovery is reasonable); *Redwood v. Cassway Contracting Corp.*, 2017 U.S. Dist. LEXIS 173208, *5 (S.D.N.Y. Oct.18, 2017) (net settlement of 29.1% of FLSA plaintiffs' maximum recovery is reasonable); *Felix v. Breakroom Burgers & Tacos*, U.S. Dist. LEXIS 30050, *2 (S.D.N.Y. Mar. 8, 2016) (net settlement of approximately 25% of FLSA plaintiff's maximum recovery is reasonable).

The reasonableness of the recovery is further underscored by the fact that every single Plaintiff (Ms. Jeffreys and all the opt-in Plaintiffs) have specifically agreed to it. The settlement proceeds would be distributed as follows:

| NAME | Settlement Amount |
|---|---|
| Jeffreys, Vickey | $22,398.62 |
| Gharenmani, Arvin | $14,199.90 |
| Galang, Michelle | $3,558.47 |
| Warburton, Charles | $2,247.89 |
| Safiran, Soheyla | $1,166.06 |
| Tanico, Vincent | $1,029.06 |
| Debreczeni, Sonia | $450 |

NEW YORK • NEW JERSEY • WASHINGTON, DC

District Judge John P. Cronan
Page 6
April 12, 2021

| | |
|---|---:|
| Romano, Dana | $450 |
| Roberts, Latitia | $450 |
| Gibson, Michael | $450 |
| O'Brien, Alison | $450 |
| Sangwa, Irene | $450 |
| Carrico, Cree | $450 |
| Harman, Kathyrn | $450 |
| Majumdar, Joydeep | $450 |
| Daniels, Anita | $450 |
| Li, Yifei | $450 |
| Sauveur, Hong | $450 |
| **TOTAL** | **$50,000** |

The propriety of the fairness of the amount to the Plaintiffs and why it should be approved is further addressed at pages 7-10, below.

**V.    Plaintiffs' Attorney's Fees and Expenses (*See* Lesser Dec. ¶¶ 20-31)**

As set forth in the Declarations of Seth Lesser, Esq. and Yongmoon Kim, Esq., as of April 12, 2021, Plaintiffs' counsel has spent at least 742.95 hours in prosecuting and settling this matter, resulting in a lodestar of $305,658.55. Plaintiffs' counsel has incurred $24,731.32, in actual litigation costs in the prosecution of the case. *See* Lesser Decl. ¶¶ 22, 26. The portion of the settlement amount that Plaintiffs seek as attorneys' fees and costs ($167,500) represents a significant negative .46 multiplier of the lawyers' lodestar, *i.e.*, a loss against their time of 46%. Lesser Decl. ¶ 22. As discussed, the $167,500 fee and cost number was a number that was negotiated and reached only after the Parties had reached resolution of the $50,000 amount for the Plaintiffs, and was reached under the guidance of the third-party mediator, Mr. Isserles. The $167,500 was the amount that Defendants agreed to pay to resolve a potential contested fee application, and Defendants do not contest Plaintiffs' Counsel's application for attorneys' fees and costs.[3] Any

---

[3] The Agreement also provides that "Plaintiffs' Counsel's application for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the lawsuit, and should the Court refuse to approve any amount of Plaintiffs'

District Judge John P. Cronan
Page 7
April 12, 2021

amount of the $167,500 that is not approved by the Court shall revert to Defendants.    The
propriety of this fee and cost award is discussed at pages 11-13, below.

## VI.    The Settlement Is Fair and Reasonable

Courts in this Circuit "approve FLSA settlements when they are reached as a result of
contested litigation to resolve bona fide disputes." *Archer v. TNT USA, Inc.*, 12 F. Supp. 3d 373, 387
(E.D.N.Y. 2014). Typically, courts regard the adversarial nature of a litigated FLSA case to be an
adequate indicator of the fairness of the settlement. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d
1350, 1353-54 (11th Cir. 1982) (leading decision); *Silverstein v. Alliance Bernstein L.P.*, 2013 U.S. Dist.
LEXIS 179734, at *18 (S.D.N.Y. Dec. 20, 2013). If the proposed settlement reflects a reasonable
compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores*, 679
F.2d at 1354; *Silverstein*, 2013 U.S. Dist. LEXIS 179734, at *19.

Because a settlement in an FLSA collective action is not effective unless it is approved by a
district court or the United States Department of Labor, *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 599-
600 (2d Cir. 2020), "district courts in this Circuit routinely review FLSA settlements for fairness
before approving any stipulated dismissal." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206
(2d Cir. 2015).  Where an FLSA settlement is deemed "fair and reasonable" by the Court, it should
receive judicial approval. *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).
Indeed, "there is a strong presumption in favor of finding a settlement fair, because the Court is
generally not in as good a position as the parties to determine the reasonableness of an FLSA
settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (internal
quotation marks omitted).

Last year, in *Fisher v. SD Protection, supra*, the Court of Appeals reaffirmed that the test for
evaluating the fairness of a settlement is by applying what have come to generally be referred to as
the "*Cheeks*" factors after *Cheeks v. Freeport Pancake House, supra*, factors themselves originally
established in *Wolinksy v. Scholastic, supra*:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable
> the parties to avoid anticipated burdens and expenses in establishing their respective claims
> and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the
> settlement agreement is the product of arm's length bargaining between experienced
> counsel; and (5) the possibility of fraud or collusion.

*Fisher*, 948 F.3d at 600 (*quoting Wolinsky*, 900 F. Supp. 2d at 335-36); *accord Rojas v. Three Decker Rest.*,
*Ltd.*, 19-cv-8592, 2020 U.S. Dist. LEXIS 104024 (S.D.N.Y. June 20, 2020) (recognizing test to
apply).

Here, each of the factors supports the fairness and reasonableness of the Settlement.

---

Counsel's application for attorneys' fees and costs, such a ruling shall not impact or otherwise affect the
Court's ruling on the fairness of the settlement of the lawsuit." (Agreement, ¶ 1(b)).

NEW YORK • NEW JERSEY • WASHINGTON, DC

District Judge John P. Cronan
Page 8
April 12, 2021

        a.   The Plaintiffs' Range of Possible Recovery

As discussed above, 12 of the 18 members of the collective have overtime claims with little to no value, either due to their not reporting workweeks with more than 35 hours, or because their period of employment with Defendants is outside the statute of limitations. Were this case to proceed to judgment, it is overwhelmingly likely that these individuals would face the prospect of no monetary recovery at all. However, under the terms of the Settlement Agreement, each of these 12 individuals will receive $450, an undoubtedly fair result. All 12 of these individuals have authorized approval of the Settlement.

The recovery is also very favorable for the 6 individuals with overtime claims within the statutory period. As noted above, the individual settlement amounts for these six are greater than the calculated amount of backpay they are owed, and represent more than 2/3 of their total maximum damages, including liquidated damages: Jeffreys (71%), Gharenmani (67%), Galang (67%), Safiran (67%), Tanico, (68%) and Warburton (67%).[4] For these Plaintiffs ultimately to recover more than these Settlement Amounts would require Plaintiffs to succeed overwhelmingly and on *all* points at trial: being credited with maximum overtime hours, for the full statutory periods, and to show that Defendants acted willfully (in order to get a full three years of damages for FLSA claims) and without good cause (to get liquidated damages under the FLSA). All litigation involves risk and counsel in this case are fully aware of the risks inherent in FLSA actions, particularly as to claims involving Defendants' state of mind having litigated FLSA collective actions to trial. While it is certainly within the realm of possibility that plaintiffs could have run a "clean sweep" at trial, a very real risk of not doing so always existed and they would have faced a recovery of far smaller amounts in such an event. Indeed, Defendants' own pre-mediation calculations of the amounts to which these six Plaintiffs were entitled were significantly smaller than the amounts included in the Settlement. That is why "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969).

This factor favors approval of the Settlement.

        b.   The Settlement Will Enable the Parties to Avoid Anticipated Burdens

Litigating FLSA claims and damages at trial would be a fact-intensive process demanding additional costly litigation by both parties. Without this Settlement, both parties would need to spend significant amounts of time, money and expense to complete fact discovery, undertake

---

[4] Ms. Jeffreys recovers a slightly higher percentage of her total possible damages in light of her having stepped forward to bring this case and in lieu of a formal application for a service award, to which she otherwise would certainly have been entitled to receive in light of her stepping forward and her dedicated service to the opt-in collective members by virtue of her working continually with counsel throughout the case. *Cf. Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (leading decision) ("[S]uch awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.") (citing cases).

NEW YORK • NEW JERSEY • WASHINGTON, DC

District Judge John P. Cronan
Page 9
April 12, 2021

decertification and final certification briefing, and then likely enter a lengthy period spending time and resources to prepare for trial, including meeting with and preparing each of the individual Plaintiffs for trial testimony, preparing trial exhibits, preparing motions *in limine*, preparing pre-trial briefing, drafting jury instructions, voir dire, and a verdict form, preparing opening statements, presenting the case to a jury, preparing summation, presenting the issue of liquidated damages to the Court for a decision, likely post-trial motions practice, and possible appeal. In short, the anticipated burdens and expenses on both parties were significant.

> This factor favors approval of the Settlement.

> c.   The Seriousness of the Litigation Risks

As discussed above, litigation could present serious risks to Plaintiffs. For twelve of the Plaintiffs, the risk is significant that they face no potential recovery at all. For the remaining six, they would need to prove willfulness on the part of Defendants at trial to ensure a third year of time and liquidation damages, and Defendants also would offer defenses that Plaintiffs did not in fact work overtime in as many weeks as Plaintiffs allege, and that in any case Plaintiffs would only be entitled to a half-time calculation of damages rather than time-and-a-half.  Further, given the disparate amounts of time individuals worked as part-time employees and at different locations, there would have been the risk of decertification of the collective, as which cases have shown the substantial difficulty and litigation risk involved in such cases. *See, e.g., Stevens v. HMS Host Corp.*, 2014 U.S. Dist. LEXIS 119653 (E.D.N.Y. Aug. 26, 2014) (decertifying retail sale FLSA collective action); *Hernandez v. The Fresh Diet*, 2014 U.S. Dist. LEXIS 139069 (S.D.N.Y. Sept. 26, 2014). While it is recognized that when a settlement assures quick payment of significant amounts, "even if it means sacrificing speculative payment of a hypothetically larger amount years down the road," settlement can be reasonable, *Schaubeck v. Morris Pharmacy, Inc.*, No. 17 Civ. 3909, 2018 WL 5292127, at *3 (S.D.N.Y. Oct. 25, 2018), here, the quality of the result for the Plaintiffs makes it particularly clear that the Settlement is fair and reasonable and reflects Plaintiffs' Counsel's thorough assessment of the risks the case faced.

> This factor favors approval of the Settlement.

> d.   The Settlement is the Result of Arm's Length Bargaining Between Experienced
>      Counsel

Counsel for both Plaintiffs and Defendants are experienced lawyers with ample experience in FLSA disputes and who duly counseled their respective clients on the benefits and risks of continued litigation. *See* Declarations of Seth Lesser and Yongmoon Kim, attached as Exhibits 2 and 3. As well, Defendants' counsel Jackson Lewis P.C. is a well-respected nationwide firm with a highly regarded wage and hour practice. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (MKB) (JO), 2019 U.S. Dist. LEXIS 216796, at *190 (E.D.N.Y. Dec. 16, 2019) ("The quality of opposing counsel is also important in evaluating the quality of Class Counsels' work." (quoting *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 174 (S.D.N.Y. 2007)).  All counsel have significant experience in litigating, including trying, and settling FLSA disputes; indeed, the undersigned's firm has particularly extensive litigation

District Judge John P. Cronan
Page 10
April 12, 2021

experience and success in handling FLSA matters. *See Rodriguez-Hernandez v. K Bread & Co., Inc.*, No. 15 Civ. 6848, 2017 WL 2266874, at *4 (S.D.N.Y. May 23, 2017) (settlement approved where "plaintiff and defendant [were] represented by attorneys experienced in wage-and-hour litigation"); *Santos v. Yellowstone Props., Inc.*, No. 15 Civ. 3986, 2016 WL 2757427, at *3 (S.D.N.Y. May 10, 2016) (same); *see also, e.g., Craig v. Rite Aid Corp.*, No. 08 Civ. 2317, 2013 WL 84928, at *12 (M.D. Pa. Jan. 7, 2013) (Klafter Lesser are "experienced wage and hour class action litigators with decades of accomplished complex class action experience between them and [] the Class Members have benefitted tremendously from able counsel's representation"); *Youngblood v. Family Dollar Stores, Inc.*, No. 09 Civ. 3176, 2011 WL 4597555, at *4 (S.D.N.Y. Oct. 4, 2011) (finding Klafter Lesser to be "qualified, experienced and able to conduct" in certifying firm as Rule 23 class counsel in FLSA case).

There can also be no question that the Settlement was reached through arm's-length negotiation, here, with the assistance of Mr. Isserles, an experienced JAMS mediator. Lesser Decl. at ¶6. The fact that Plaintiffs' Counsel negotiated a settlement for the Plaintiffs separately from their own attorneys' fees and costs *(id.* at ¶ 12) also demonstrates that there was no collusion. *See In re MetLife Demutualization Litig.,* 689 F. Supp. 2d 297, 341 (E.D.N.Y. 2010) ("the absence of a specific determination of attorneys' fees as part of the Settlement favors the Settlement by demonstrating a lack of collusion between the parties."); *Slaughter v. Sykes Enterprises, Inc.*, No. 17 Civ. 2038, 2019 WL 529512, at *8 (D. Colo. Feb. 11, 2019) ("The parties negotiated the Fees and Expenses separately from, and after, they negotiated the Collective Members' settlement amount, and therefore the amount of the Collective Members' recovery was not reduced to account for Plaintiff's fees, and Plaintiff's Counsel's loyalty to their clients was not undermined by a simultaneous negotiation.") (internal quotation marks omitted).

This factor favors approval of the Settlement.

e.   The Possibility of Fraud or Collusion.

As just noted, and given the parties' arm's-length negotiating and the parties' good faith participation in settlement discussions, there was no opportunity for fraud or collusion. The parties represented their clients zealously, the case was mediated by an experienced third-party mediator, and the result was one that both parties consider to be a fair and reasonable settlement.

Ultimately, the negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiffs and the risk that recovery after trial would be less than the negotiated settlement amount. Settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation. Defendants asserted legitimate substantive defenses which highlighted substantial risk to Plaintiffs' ability to prevail on their FLSA claims in this litigation. Arm's-length negotiations between knowledgeable counsel followed, culminating in a negotiated resolution after private mediation. Accordingly, the Settlement as to the Plaintiffs is fair and should be approved.

NEW YORK • NEW JERSEY • WASHINGTON, DC

District Judge John P. Cronan
Page 11
April 12, 2021

## VI.    The Attorneys' Fee and Cost Amounts Should be Approved

Likewise, Plaintiffs' Counsel respectfully submits that the separately negotiated cost and fee amount, totaling $167,500 should be approved.  In the course of the litigation, counsel incurred out-of-pocket expenses of $24,731.32, and a lodestar of $305,658.55.   Lesser Decl. ¶ 22. Accordingly, of the $167,500, $24,731.32 represents return of incurred costs, which leaves $142,768.68 for fees.

In effect, Plaintiffs' Counsel here were seeking prevailing party fees for their effort undertaken to obtaining a recovery in favor of their clients, and would have, had the case proceeded to trial, sought such fees under the attorneys' fee provisions of the FLSA and the New York Labor Law, both of which provide that a prevailing plaintiff is entitled to reasonable attorneys' fees and costs, as the Second Circuit reaffirmed last year.  *Fisher*, 948 F.3d at 600 (citing 29 U.S.C. § 216(b); NYLL § 663(1); *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008) (citing 29 U.S.C. § 216(b)).  In doing so, the Court of Appeals emphatically ruled, and at length emphasized how, particularly in FLSA cases, that attorneys' fees are not to be considered in some proportional amount to the recovery the plaintiffs might get at trial or by settlement because such a rule "would be inconsistent with the remedial goals of the FLSA, which we have deemed a "uniquely protective statute."  *Id.* at 603.  The Court made it clear that because "'run of the mill' FLSA cases where the potential damages are low and the risk of protracted litigation high" can be commonplace, "[f]ee awards in wage and hour cases should 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'"  The Court likened FLSA fees to actions in the public interest, like civil rights litigation, where the public interest goals are "'perhaps most meaningfully served by the day-today private enforcement of these rights, which secures compliance and deters future violation,'" which is why "'Congress meant reasonable attorney's fees to be available to the private attorneys general who enforce the law, not only to those whose cases make new law.'"  *Id.* at 605 (*quoting Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 (2d Cir. 1999)); see also *Fisher*, 948 F.3d at 600-605 (addressing these points at length).

The determination of what is a reasonable fee looks, at a minimum, to the time and labor counsel put into litigation, the risks they faced, the quality of the representation, and public policy considerations.[5]  Before addressing these factors, it bears repeating at that the requested fee was

---

[5] In *Fisher*, the Court of Appeals did not provide a test for determining what is a "reasonable" fee award. Traditionally, courts in the Circuit have often applied the *Goldberger* factors, which are used to analyze the propriety of fee requests in class action settlements. *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47, 49 (2d Cir. 2000) (directing courts to consider (1) counsel's time and labor; (2) the case's magnitude and complexities; (3) the risk of continued litigation; (4) the quality of the representation; (5) the fee's relation to the settlement; and (6) public policy considerations; *see also Millien*, 2020 U.S. Dist. LEXIS 141633, *21-22 (*Goldberger* factors apply to determination of fee shifting award approval).  However, in *Fisher*, the Court made it clear that magnitude and complexity of the case and the fee's relationship to the total settlement were not relevant; indeed, it emphasized that even "run of the mill" FLSA cases supported fee awards and its primary holding was that proportionality did not matter and that fees well in excess of what plaintiffs might receive could be entirely appropriate.  *Fisher*, 948 F.3d at 602-05 (citing cases and so hplding).  Accordingly, below, the other four *Goldberger* factors are addressed.

NEW YORK • NEW JERSEY • WASHINGTON, DC

District Judge John P. Cronan
Page 12
April 12, 2021

negotiated after, and separately from, the clients' recovery, and that the fee is being separately paid by Defendant (and, if not approved, would revert to Defendant).

As to the expense and labor, Plaintiffs' Counsel incurred out-of-pocket costs and expenses in the amount of $24,731.3 to cover the costs of this litigation – including the costs of the filing fees, subpoena service, the notice process (the single largest expense), legal research (the second largest expense), the cost of the mediation itself, transportation, and telephone usage. See Lesser Decl. ¶¶ 26-30; Kim Decl. (Lesser Decl. Ex. 4) ¶ 24. Plaintiffs' Counsel believes the costs and expenses are reasonable given the scope of this litigation to date, are documented on the books of Plaintiffs' Counsel, and are reasonable in relation to the settlement obtained, and should be awarded. *Id.*; *see also Fisher*, 948 F.3d at 600 ("[a]n award of costs normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.") (quotation omitted).

As to labor and time, as noted, Plaintiffs' Counsel spent at least 742.95 hours in litigating this case – from reviewing the possible claim, to drafting the complaint, to addressing the initial discovery and engaging in discovery negotiations with defense counsel, to responding to discovery on behalf of Ms. Jeffreys, to negotiating a mechanism to provide for notice without the necessity of making a motion for FLSA notice, to negotiating the form of the notice that was sent, to taking in and filing the opt-ins as they arrived, and thereafter to agreeing to a mediator and undertaking all the work attendant on being prepared for the mediation, including reviewing the time and payroll records provided by Defendants, to discussing the same with Plaintiffs, and otherwise preparing for and attending the mediation, and finally to preparing the settlement papers and this present motion for approval. Plaintiffs' Counsel believe that it is fair to say both that (1) accomplishing this work for a total of under 750 hours is reasonable and (2) they accordingly vigorously pursued the claims of the putative collective and worked efficiently in moving this litigation along to the point at which the clients are receiving, as discussed, very fine recoveries. The time involved in this effort, against which Class Counsel will suffer a loss in terms of the lodestar on their firms' books of more than 50%, is, we submit, worth of recompense. *See Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980) (recognizing the importance of a financial incentive to entice qualified attorneys to devote their time to complex, time-consuming cases in which they risk non-payment); *Fisher*, 948 F.3d at 604-05 (emphasizing the importance of paying attorneys to undertake the bringing of FLSA cases). Plaintiffs' Counsel's time detail records are attached as Exhibit 3 to the Lesser Declaration and Exhibit A to the Kim Declaration (Lesser Decl. Ex. 4). As noted, the total lodestar to date is $305,658.55, which means that the fees sought here are substantially *below* Plaintiffs' Counsel's lodestar, which represents a loss on their books and records and a negative multiplier of .46. Lesser Decl. ¶ 22. This factor supports the negotiated fee amount.[6]

---

[6] In addition to the negative multiplier aspect of the lodestar, it is worth noting that the hourly rates charged are those charged to paying clients (Lesser Decl. ¶ 22), which is relevant because Plaintiffs should recover fees at the rates that comparable counsel actually charge paying clients. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 184 (2d Cir. 2008) (in setting the reasonable hourly rate, the district court should consider "what a reasonable, paying client would be willing to pay"). The "usual hourly billing rates charged to paying clients . . . are reasonable rates of compensation for their work in this action." *Meriwether v. Coughlin*, 727 F. Supp. 823, 831 (S.D.N.Y. 1989);

District Judge John P. Cronan
Page 13
April 12, 2021

As to the risks faced by Plaintiffs' counsel, this point has been addressed at pages 5, 8-9, but it is worth adding in this regard that all of Plaintiffs' Counsel's time (and expenses) was put in on a contingency basis, with no guarantee of any recovery.  Thus, this factor also supports the fee request here.

Finally, important public policy considerations also support approval of the requested fees, costs and expenses.  In considering attorneys' fees, courts are mindful that such awards serve the dual purpose of encouraging representatives acting as "private attorneys' general," to seek redress for damages to entire classes of persons and discouraging future misconduct of a similar nature; indeed, as noted, in *Fisher*, the Court of Appeals emphasized this point specifically in the context of FLSA cases, just like the present where the potential recovery for the plaintiffs was dwarfed by the amount of time and effort it took to obtain the recovery.  Accordingly, this factor is also met.

*     *     *     *     *

For all the reasons set forth above, the parties submit that the proposed Settlement is fair and reasonable and should be approved by the Court and further that the requested award of fees and costs is reasonable and should also be approved by the Court.  Should the Court wish any further information with respect to any matter addressed herein, the parties would be pleased to provide it.

We appreciate Your Honor's attention to this matter.

Respectfully submitted,

Seth R. Lesser, Esq. of
KLAFTER LESSER LLP

Enclosures

cc:     All counsel (via CM/ECF)

---

see also, e.g., *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008) (finding that actual rates charged to clients is "strong evidence of what the market will bear" (collecting cases)).

NEW YORK • NEW JERSEY • WASHINGTON, DC